IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PHILIP P. CASALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-774-WKW |
| | ) | [wo] |
| MARTHA N. TILLMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Philip P. Casale ("Plaintiff") filed this suit against his former spouse, Defendant Martha N. Tillman ("Defendant"). Plaintiff asks this court to enjoin Defendant from proceeding with an action in the Circuit Court of Dale County, Alabama, to domesticate and enforce contempt orders issued by Georgia's state courts (the "Georgia contempt orders"). Plaintiff contends that an injunction is warranted because the Georgia contempt orders violate the Uniformed Former Spouses Protection Act ("UFSPA"), 10 U.S.C. §1408. Defendant timely moved to dismiss. (Doc. # 7.) Because this court lacks subject matter jurisdiction over this action, and is otherwise prevented from granting the requested relief, Defendant's motion is due to be GRANTED, and the case will be DISMISSED.

**I. FACTS AND PROCEDURAL BACKGROUND**

The parties generally concur that they were divorced by decree of the Superior Court of Chatham County, Georgia. (Pl.'s Ex. A ¶ 1.) At the time of the divorce, Plaintiff was a warrant officer on active duty with the United States Army. (Compl., at 2.) Plaintiff claims

that pursuant to the divorce decree, Defendant was awarded 50 per cent of his military retirement pay, which he paid directly to Defendant when he retired from active duty and began drawing benefits. (Compl., at 2-3.)

Plaintiff alleges that when he returned to active duty, he stopped drawing retirement and consequently stopped making payments to Defendant. (Compl., at 3.) Plaintiff further alleges that after he stopped making those payments, Defendant brought an action for contempt against him in Georgia pursuant to a provision in the divorce decree that prohibits him from taking actions that would defeat her right to receive her portion of his retirement benefits. (*Id.*) Plaintiff claims that a Georgia court found him in contempt for discontinuing his retirement payments by returning to active duty. (*Id.*) Plaintiff does not specifically allege whether he opposed or appealed that order, but the exhibit attached to his Complaint suggests that there were subsequent proceedings related to that finding that resulted in additional contempt orders. (Pl.'s Ex. A ¶¶ 3, 4.) Moreover, Defendant asserts that an appeal was ultimately taken to the Georgia Supreme Court. (Def.'s Resp. ¶¶ 8, 10.) In any event, Plaintiff does not claim that he is, or was, unable to appeal the initial or subsequent Georgia contempt orders.

Plaintiff now resides in Alabama. (Compl., at 2.) On August 28, 2007, Defendant sought to have the Georgia contempt orders domesticated and enforced by the Circuit Court of Dale County, Alabama, (the "Alabama action") pursuant to Alabama's Uniform

Enforcement of Foreign Judgment Acts. Plaintiff filed this suit for an injunction prohibiting Defendant from going forward with that action.

## II. DISCUSSION

### A.  *The Court Must Determine If It Has Jurisdiction Over This Matter*

Subject matter jurisdiction of the federal courts is exclusively conferred and defined by statute. *Morrison v. Allstate Indem. Co.,* 228 F. 3d 1255, 1261 (11th Cir. 2000). It cannot be created by the parties' consent nor supplanted by considerations of convenience or efficiency. *Id.* (internal quotation marks and citations omitted). As a result, federal courts must inquire *sua sponte* into jurisdiction whenever it appears to be lacking. *Id.*

#### 1.  **Plaintiff Does Not Have a Claim Arising Under Federal Law**

The only asserted ground for subject matter jurisdiction is 28 U.S.C. § 1331, which confers jurisdiction in cases "arising under" federal law. Specifically, Plaintiff argues that this case involves a federal question because the Georgia contempt orders violate the UFSPA. (Compl., at 3.)[1] However, an action does not arise under federal law unless a federal right, privilege, or immunity is an essential element of a plaintiff's cause of action against a defendant. *Rivet v. Regions Bank of La.,* 522 U.S. 470, 475 (1998). Jurisdiction does not exist if a federal question merely provides a potential defense. *Id.*

---

[1] Plaintiff's Complaint makes passing reference to a request for "declaratory relief." (Compl., at 1.) The Declaratory Judgment Act, 28 U.S.C. § 2201, is procedural in nature and is not an independent source of jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 667 (1960).

Case 1:07-cv-00774-WKW-SRW    Document 18    Filed 07/15/2008    Page 4 of 11

In this case, the UFSPA does not grant any right, privilege, or immunity to Plaintiff. Instead, the UFSPA allows "any *court* of competent jurisdiction of any state" to treat military retirement pay as spousal or community property "in accordance with the law of the jurisdiction of that state." 10 U.S.C. §§ 1408(a)(1)(A); 1408(c)(1) (emphasis added). In other words, it empowers state *courts* to apply state divorce laws to military pensions. It does not confer rights upon persons, like Plaintiff.

That the statute empowers state courts is consistent with legislative history. In 1981, the Supreme Court held that existing federal laws granted husbands and wives no right to their spouses' military pensions, and that state courts were thus prohibited from applying state community property laws to military pensions. *McCarty v. McCarty*, 453 U.S. 210, 233 (1981), *superseded by statute*, Uniformed Services Former Spouses Protection Act, Pub. L. No. 97-252, Title X, §1002(a), 96 Stat. 730 (Sept. 8, 1982) (codified as amended at 10 U.S.C. § 1408). In response, Congress passed the UFSPA, and announced that it did so to "restore the law to what it was when the courts were permitted to apply state divorce laws to military retirement pay." S. Rep. No. 97-502, at 5 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 1599, 1600.

The statute includes restrictions on the power it grants to state courts. Of relevance, the UFSPA does not "authorize any court to order a member to apply for retirement or retire at a particular time in order to effectuate any payment under this section." 10 U.S.C. § 1408(c)(3). Relying on this provision, Plaintiff claims that the Georgia court violated the

4

statute by finding him in contempt for returning to active duty and discontinuing payments to his former spouse. (Compl., at 3.) Assuming that the Georgia contempt orders are to be so construed,[2] that construction does not constitute the basis for a cause of action against Plaintiff's former spouse in this court. Rather, it is a defense that Plaintiff should have raised in opposition to the initial motion for contempt, or a basis to have appealed the initial finding of contempt to the Georgia Court of Appeals, and then to the Georgia Supreme Court. If those courts failed to recognize that defense, Plaintiff could obtain federal review only by appeal to the United States Supreme Court pursuant to 28 U.S.C. § 1257(2). Plaintiff cannot, however, file this new action in a lower federal court, ostensibly against his former spouse, in order to challenge the manner in which the Georgia court ruled.

Indeed, this case's procedural posture is telling. Defendant filed the Alabama action to enforce the Georgia contempt orders against Plaintiff. Plaintiff did not, and could not, remove the Alabama action to federal court because there is no federal question at issue. Instead, he filed a new case in this court so that he could invoke a federal statute. But a pig in a party dress is still just a pig. Plaintiff may have had a defense based on federal law that he could have raised elsewhere, but he does not have a federal cause of action here.

---

[2] Although Plaintiff failed to provide the court with copies of the contested Georgia contempt orders, Exhibit A to his Complaint recites portions from the divorce decree and the initial finding of contempt. The court notes that Plaintiff's interpretation of the Georgia ruling seems strained as the divorce decree appears to contemplate how payments were to be handled if Plaintiff returned to work. For purposes of this analysis, however, the court construes Plaintiff's allegations about the order as true.

5

**2.       This Court Lacks Jurisdiction to Review a Final State Court Judgment**

Even if Plaintiff could overcome this hurdle, this court would still lack jurisdiction pursuant to the *Rooker-Feldman* doctrine. *Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923). That doctrine prohibits federal courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commence and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine is rooted in two statutes: (1) 28 U.S.C. § 1257, which limits review of state court proceedings to the United States Supreme Court; and (2) 28 U.S.C. §1331, which provides that federal district courts are courts of original, not appellate, jurisdiction. *See Rooker,* 263 U.S. at 416.

*Rooker-Feldman* applies equally to claims that are actually raised in a state court and to those that are "inextricably intertwined" with a state court's judgment. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983). A claim is inextricably intertwined if a plaintiff's federal case is predicated on finding that a state court ruling was wrong. *See, e.g.*, *Goodman v. Sipos,* 259 F.3d 1327, 1332 (11th Cir. 2001) (explaining that a claim is "inextricably intertwined" with a state court judgment if it succeeds only to the extent the state court wrongly decided the issue before it); *Powell v. Powell*, 80 F.3d 464, 466-67 (11th Cir. 1996) (explaining that a claim was "inextricably intertwined" with a state court award because a finding in plaintiff's favor would "effectively nullify" a state court's judgment);

6

*GASH Associates v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir. 1993) (explaining that "inextricably intertwined" determination hinges on whether a federal claim alleges that injury was caused by a state court judgement instead of an independent out-of court event).

Plaintiff's defense, which he attempts to assert as a claim, is inextricably intertwined with the Georgia court's rulings. Plaintiff alternately asserts that the Georgia contempt order "is not authorized" by the UFSPA, (Compl., at 4); that this case is "about a court in Georgia that has violated federal law in its handling of . . . military retirement pay," (Pl.'s Resp., at 1); and that the "Georgia court action . . . was in violation of federal law." (Compl., at 4.) In sum, Plaintiff complains that he was injured by the Georgia state court because it ruled wrongly – he has no claim independent of his challenge to that ruling. If permitted to go forward, he would seek to have this court do precisely what the *Rooker-Feldman* doctrine prohibits: review and reverse the Georgia court. Accordingly, to the extent that Plaintiff's Complaint seeks such relief, it must be dismissed for lack of subject matter jurisdiction. This court simply cannot entertain an action that amounts to nothing more than a state court appeal. *Powell*, 80 F.3d at 466-67; *Liedel v. Juvenile Court of Madison County, Ala.*, 891 F.2d 1542, 1545 (11th Cir. 1990); *Staley v. Ledbetter*, 837 F.2d 1016, 1017-18 (11th Cir. 1988).

Plaintiff's preemption arguments do not resuscitate his case. Plaintiff contends that the *Rooker-Feldman* doctrine is inapplicable because the Georgia court found in him contempt for returning to active duty and discontinuing payments to his former spouse even

though federal law preempts state courts from compelling military personnel to retire. (Pl.'s Resp., at 4; Pl.'s Supplement to Resp., *passim*). Assuming, again, that the order in fact prohibited Plaintiff from returning to active duty, he should have raised the federal preemption issue when opposing the motion for contempt or when appealing the contempt ruling to the Georgia Court of Appeals and Georgia Supreme Court. *Blue Cross & Blue Shield of Md., Inc. v. Weiner*, 868 F.2d 1550, 1555 (11th Cir. 1989). Under well-settled principles of federalism, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located. *Powell,* 80 F.3d at 467.

Moreover, although the *Rooker-Feldman* doctrine would be inapplicable if Plaintiff had no reasonable opportunity to raise a federal preemption defense in the Georgia proceedings, Plaintiff never claims that he was deprived of such an opportunity. *Id.* at 467-68.[3] Defendant asserts, and Plaintiff does not deny, that Plaintiff appealed the contempt orders. It was incumbent upon him to raise the UFSPA provisions at that time. Any failure to assert a defense does not constitute a lack of a reasonable opportunity to do so such that

---

[3] For this reason, Plaintiff's reliance on *Agg v. Flanagan,* 855 F.2d 336 (6th Cir. 1988), is misplaced. (Pl.'s Resp., at 4.) Indeed, that case supports dismissal of Plaintiff's Complaint. In that diversity case, the plaintiffs claimed that the state of Ohio's procedures to effectuate wage garnishments for child support violated their federal due process rights. *Agg,* 855 F. 2d at 339. The Sixth Circuit noted that an incorrect decision by a state court about a child support order does *not* constitute a deprivation of a federal right that can be redressed by a federal court. *Id.* (emphasis added). Rather, the proper course to correct such a mistake is through appeal. *Id.* Nonetheless, a claim that the plaintiffs' federal rights were violated by state statutory procedures that allowed support orders to be issued without a hearing could be entertained by a federal court. *Id.* In this case, Plaintiff does not claim that appellate procedures in Georgia were deficient in that they prevented him from appealing the contempt orders, only that the Georgia court ruled wrongly. Although the latter claim could possibly give rise to federal jurisdiction, the former cannot.

Plaintiff can escape *Rooker-Feldman's* application.[4] *Powell,* 80 F. 3d at 467. Litigants are thus encouraged to fish or cut bait.

### B.  *This Court Cannot Enjoin Ongoing State Proceedings*

Plaintiff faces another hurdle. Even if this court possessed subject matter jurisdiction over the matters alleged in the Complaint, the Anti-Injunction Act would bar it from enjoining Defendant's attempt to domesticate the Georgia contempt orders in the Alabama action.

The Anti-Injunction Act precludes federal courts from enjoining state court actions[5] unless: (1) Congress has expressly authorized such relief by statute; (2) an injunction is "necessary in aid of (the court's) jurisdiction;" or (3) an injunction is necessary "to protect or effectuate (the court's) judgments." 28 U.S.C. § 2283. In the interest of comity and federalism, the Supreme Court has held that these three exceptions must be strictly construed, and that all "'doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to

---

[4] To the extent that Plaintiff unsuccessfully raised the preemption defense in the Georgia state courts, he should have appealed to the United States Supreme Court. Defendant asserts, and Plaintiff does not deny, that he did not petition for a writ after the Georgia Supreme Court ruled. (Def.'s Resp. ¶ 8.)

[5] Instead of seeking a an injunction against the Circuit Court of Dale County, Plaintiff seeks an order restraining his former spouse from attempting to enforce the Georgia contempt orders in that court. (Compl. at 1.) Nonetheless, the Anti-Injunction Act applies whether a requested injunction would be imposed against private litigants or a state court. *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng's*, 398 U.S. 281, 287 (1970). To find otherwise would allow a litigant to make an end-run around the statute by creatively captioning a motion for an injunction. 17A Charles Alan Wright, et al., *Federal Practice and Procedure* § 4222 (3d ed. 2007). Moreover, interference with state proceedings results if a party to a state suit is enjoined from continuing litigation or if the court itself is enjoined. *Id.* That friction between federal and state courts is the evil that Congress intended to prevent when enacting the Anti-Injunction Act. *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 630 (1977).

finally determine the controversy.'" *Vendo,* 433 U.S. at 630 (quoting *Atlantic Coast Line*, 398 U.S. at 297). In short, a federal injunction restraining prosecution of a state court suit is absolutely prohibited unless authorized by one of the three narrow statutory exceptions specifically defined in the Anti-Injunction Act. *Mitchum v. Foster*, 407 U.S. 225, 228-29 (1972).[6]

Plaintiff's request does not fall within the ambit of any of these three narrow exceptions. The injunction is not authorized by any statute, including the UFSPA. Indeed, the UFSPA empowers state courts to act in accordance with state law; it does not grant any federal rights or remedies to Plaintiff that may be compromised unless the Alabama action is enjoined. *Mitchum*, 407 U.S. at 238. Nor would the injunction issue in aid of this court's jurisdiction. That exception codifies the rule that if an action is *in rem*, the court that first obtains jurisdiction over the *res* may proceed without interference from actions in other courts. *Id.* at 235. But this case is in no way related to the disposition of real property. Lastly, the injunction is not necessary to protect or effectuate this court's judgments. That exception, grounded in *res judicata* principles, applies to prevent re-litigation of an issue that has already been presented to and determined by a federal court. *Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). Here, there is no prior federal court ruling. Accordingly, this court cannot enjoin Defendant from pursuing enforcement in the Alabama action.

---

[6] Again, Plaintiff's Complaint refers briefly to a request for "declaratory relief." (Compl., at 1.) Courts hold that the Anti-Injunction Act bars a federal court from issuing a declaratory judgment that has the same effect as an injunction barred by the Anti-Injunction Act. *See Tx. Employers' Ins. Ass'n v. Jackson,* 862 F. 2d 491, 506 (5th Cir. 1988).

## III. CONCLUSION

For the reasons set forth above, it is ORDERED that Defendants' Motion to Dismiss (Doc. # 7) is due to be GRANTED. This case is DISMISSED. An appropriate judgment will be entered.

DONE this 15th day of July, 2008.

                                  /s/ W. Keith Watkins
                                UNITED STATES DISTRICT JUDGE